```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES of AMERICA,

                    Case No. 1:18-cr-10259 FDS
     v.


TYRONE "TY" SMITH,
          Defendant.
```

## DEFENDANT'S SENTENCING MEMORANDUM

### Preliminary

Defendant, Tyrone Smith, by his counsel, Kevin L. Barron, Esq., respectfully offers this memorandum in aid of his July 24, 2019 sentencing hearing.  Defendant and the government have not objected to the July 9, 2019 final PSR. Defendant relies on its statement of Offender Characteristics.  Defendant requests a sentence of 15 months' incarceration followed by three years of supervised release.

### FACTS

A.   Guidelines Sentence Range and Motor Vehicle Offenses

The PSR determines a Guidelines Sentence Range of 24 to 30 Months.  PSR ¶105.  That GSR is based on a Total Offense Level of 10, after reductions for minor role and acceptance of responsibility (PSR ¶¶26 - 34), and a Criminal History Category of VI with 21 criminal history points (PSR ¶¶53 & 54).  Of the total criminal history points, 13 of these are for motor vehicle

1

related offenses.  PSR ¶¶45, 46, 48, 49, 50, 51 & 52.  The most serious of these involved speeding, causing a personal injury accident and feeling the scene.  PSR ¶50.  The remainder are largely habitual traffic offender convictions for driving without a license.

B.   Co-Defendant's Below Guidelines Sentence

On March 11, 2019, the co-defendant in this case, Jarrod Benjamin, received a sentence of 12 months and a day followed by three years of supervised release.  Doc. 59.  The Court granted defendant Benjamin's motion for a downward variance over government objection.  Doc. 60, p. 3.  The Court cited Role in the Offense, Age, Lack of Youthful Guidance, Drug and Alcohol Dependence, Family Ties and Responsibilities and Remorse.  *Id.*  Most, if not all, of these apply to M. Smith.

C.   Offender Characteristics

1.   "Born to Lose, Built to Win"

Usually, a defendant's tattoos provide little helpful information. Here, however, they do.  Mr. Smith's hands carry the words "Born to Lose, Built to Win", a message of hopeful determination.  He reports that this aphorism describes his outlook for supervised release.  Mr. Smith intends to speak at sentencing on this theme.

2.  Upbringing - Family History

Mr. Smith has an unfortunate family history, worse than that of the average offender in these cases. Defendant has never had contact with his father. PSR ¶76. Defendant grew up visiting his mother in prison where she was serving an 11-year sentence for accessory to murder. Defendant and his two sisters were raised by their maternal grandparents, a bus driver and a homemaker. PSR ¶73. The grandfather died while defendant was still young and the grandmother struggled to raise the children. *Id.*

Defendant was close to his maternal half brother, Tyrelle Baker, murdered in Brockton at age 23. Defendant's mother and sister, Latasha, both report that the brother's murder had a profound effect on the family and on defendant. Letter from Latasha Baker, Doc. 75; mother's statement to Probation, PSR ¶82.

Defendant's sister, Latasha, a nurse, reports that she is willing to house defendant while defendant is on supervision. Letter of Latasha Baker, Doc. 75. She and defendant have a close relationship. She reports defendant's consistent presence in the family and his closeness to his nieces and nephews and a gentle and giving nature. *Id.*

Defendant has an intermittent work history because of repeated short-term incarceration. Defendant nonetheless has a position open to him on release at Sunny's Car Wash when he is

released from custody.  Letter from Sunny's, Doc. 31-1; PSR ¶96. Defendant has also worked in recycling and food service.  PSR ¶¶96-100.

D.  Defendant's Own Family

Defendant has a one year-old daughter Melanie Dream Smith. Before his arrest, Mr. Smith resided with the child's mother, Melanie Perry.  Ms. Perry was supportive of Mr. Smith's release, offering to post $5,000.00 bail, provide defendant a drug-free home and to transport him to work.  Letter of Melanie Perry, Doc. 31-2.  Mr. Smith and Melanie Perry had lived together with young Melanie and Ms. Perry's two other children.  As Ms. Perry has reported, Mr. Smith took on a parental role with her two older children and had a close relationship with them.

Defendant wants to help raise his daughter Melanie, as he did before his arrest, and his family assist (PSR ¶75) the mother in the care of defendant's daughter.

ARGUMENT

POINT I:
OVER REPRESENTATION OF
CRIMINAL HISTORY CATEGORY

The Guidelines' calculation of criminal history points and Criminal History Category often present an inherently imprecise measurement of the seriousness of a defendant's criminal past, as they do in this case.  No matter how serious the offense, the maximum number of criminal history points for a single offense

4

is three.  For example, a typical mandatory minimum sentence of eighteen months for a third offense OUI with no aggravating factors (say the typical parking lot OUI), will garner the same three criminal history points as a homicide conviction.

This is not to say that defendant isn't responsible for his history of convictions, the most serious of which appears to have been a 2016 conviction for personal injury motor vehicle offense.  PSR §50.  However, it is not logical to place the defendant in the maximum CHC among the most violent recidivists.  Everything about Tyrone Smith's criminal history is small time, a long string motor vehicle offenses, a daytime breaking and entering and a small street level sale of a few grams of drugs.[1]

Full consideration of defendant's record provides "reliable information indicat[ing] that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history".  See, USSG §4A1.3(b)(1).  The "Prohibitions" (Armed Career Criminal and Repeat and Dangerous Sex Offenders) and "Limitations" (Career Offenders) on departures of §4A1.3 do not apply.  Indeed, if the axes of the Sentencing Table, seriousness of offense conduct and criminal history, are to be applied evenly and with common sense, a

---

[1] The government suggests that Mr. Smith's vacated "Dookhan" convictions should be considered in fashioning Mr. Smith's sentence.  These vacatures, however, are determinations of factual innocence by the Massachusetts courts and should be respected.

5

variance of between one and two CHC's (CHC IV, 15 - 21 months, CHC V, 21 - 27 months) should apply to distinguish Mr. Smith from purposeful and violent offenders.

POINT II:
ADEQUATE SPECIFIC
AND GENERAL DETERRENCE,
PROTECTING THE PUBLIC

The government's request for a 28-month sentence is greater than necessary to serve the purposes of the Sentencing Reform Act. Mr. Smith will tell anyone willing listen that he is tired of and depressed by his incarceration and does not want to do anything that will return him to prison. The experience of task force arrest, a federal prosecution and a US Bureau of Prisons sentence for a minor street-level distribution with a sentence of a year and a half, followed by three years of supervised release, provides adequate individual and general deterrence for the sale of four grams of cocaine base to a known adult criminal and drug user.

Mr. Smith is not the type of offender who requires longer incarceration to protect the public. At the first bail hearing, the government's witness, TFO Eric Telford, described the investigation and prosecution of Mr. Smith as an effort to reduce "quality of life crimes" in Brockton but did not describe Mr. Smith as dangerous. To the contrary, Officer Telford

described defendant's conducted himself in his contact with law enforcement like a "gentleman".

POINT III:
GEOGRAPHICAL RESTRICTIONS BURDENSOME

The government's request for geographic restrictions to keep Mr. Smith out of Brockton may be unduly burdensome for Mr Smith.  He is not opposed in principle, but his two opportunities for housing on supervised release, his mother and his sister, Latasha, are both in Brockton.  The sister, Latasha Baker, has expressed willingness to relocate from Brockton for her brother's release.  (Doc. 75.)  This may be possible, but the condition of "live where directed" by Probation can address the government's concern.  Living with Latasha Baker will do the most to enhance defendant's prospects on supervision.

CONCLUSION

For the reasons set forth above, the Court should vary downward from GSR.

Dated:  July 20, 2019               Respectfully submitted,
                                    Tyrone Smith, Defendant
                                    By his counsel,
                                    s/Kevin L. Barron
                                    Kevin L. Barron, Esq.
                                    50 Congress St. - Ste. 600
                                    Boston, MA 02109-4075
                                    (617) 407-6837

CERTIFICATE OF SERVICE

Counsel certifies that he has caused a true copy of this document to be served today through the CM/ECF system of this District on the attorneys for all the parties as set forth in the Notice of Electronic Filing and that no party requires service by other means.

s/Kevin L. Barron